STATE OF CONNECTICUT *v.* ROBERT T. SMITH

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 9, 1973—decided January 4, 1974

*Michael A. Connor, Jr.,* assistant public defender, with whom, on the brief, was *James D. Cosgrove,* public defender, for the appellant (defendant).

*Bernard D. Gaffney,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

House, C. J. The defendant was found guilty by a jury of the crime of robbery with violence in violation of § 53-14 of the General Statutes. The primary issue on this appeal is whether the court on a preliminary hearing properly denied the defendant's motion to suppress and thereafter properly overruled the defendant's objection to the in-court identification, by the victim of the robbery, of the defendant as the man who had taken from him at gunpoint more than $60 in cash which belonged to the service station where the victim was employed.

The court's finding relative to these rulings is not subject to material correction and discloses the following facts: At about 8 p.m. on September 21, 1971, a Negro male entered the office of a Hartford gasoline service station where Joel Michaud, an employee at the station, was sitting. The two men conversed in such close proximity that Michaud could see the other man clearly enough to describe him, his hair style and his wearing apparel. When Michaud went to the gasoline pumps to wait on a customer, the man accompanied him and stood within two feet of him. Both the office and the pump area were well illuminated and during the

approximately one-half hour the two men were together the intruder made no attempt to hide his face. Before he left the service station, the man robbed Michaud at gunpoint of more than $60 in cash.

The following day, Detective Joseph Hammick of the Hartford police department interviewed Michaud who described the holdup man as a "colored male, light skin, 19, 20, five eleven, thin, 125, 150, Afro, white cowboy hat with side pinned up, blue coat, blue jeans, and brown shoes." Hammick showed Michaud a book containing 150 police department photographs, among which was a black-and-white photograph of the defendant taken in 1968. Michaud was unable to select from the book the photograph of the person who had robbed him. Hammick subsequently learned from a police informant that the defendant dressed in the manner described by Michaud, and, through the informant, the police obtained a colored Polaroid photograph of the defendant. On October 22, 1971, Hammick placed the colored photograph of the defendant in the middle of the police department's photograph book which he had previously shown to Michaud and again showed the book to him. The second time Michaud looked at the photograph book, he picked out the colored photograph and identified the defendant as the man who had robbed him. At the preliminary hearing, Michaud testified that the man who robbed him was approximately the same height as himself, namely 5' 7", and wearing high-heel shoes so that the robber would have been 5' 5" or 5' 6" in height. The defendant is 5' 11" in height, and the court found that as to the defendant's height there was a disparity between the testimony given by Michaud at the preliminary hearing and

the original description he gave to the police on the day after the robbery. Nevertheless, Michaud, based upon his recollection of the defendant's characteristics and features which he observed during the commission of the crime, made a positive in-court identification of the defendant as the person who had robbed him.

The court denied the defendant's motion to suppress the identification evidence and permitted Michaud to identify the defendant to the jury at the trial as the man who had robbed him. The defendant claims that the use of the colored Polaroid photograph in the book of black-and-white police photographs was so suggestive as to deny him due process of law according to the standard enunciated by the United States Supreme Court in *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247.

We recently had occasion to discuss the validity of in-court identifications claimed to be subject to influence by pretrial identification procedures in *State* v. *Duffen,* 160 Conn. 77, 273 A.2d 863, cert. denied, 402 U.S. 914, 91 S. Ct. 1397, 28 L. Ed. 2d 657; *State* v. *Oliver,* 161 Conn. 348, 288 A.2d 81; and *State* v. *Oliver,* 160 Conn. 85, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115. In the latter case, we observed (pp. 91–92): "In *Simmons* v. *United States,* . . . the United States Supreme Court discussed the 'hazards of initial identification by photograph.' It noted that 'this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing

eyewitnesses to exonerate them through the scrutiny of photographs.' The court held 'that each case must be considered on its own facts, and that convictions based on eyewitness identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " See note, 39 A.L.R.3d 1000 et seq. Application of the *Simmons* test does not alter the settled rule that the reliability of properly admitted eyewitness identification, like the credibility and weight to be given to the testimony of any witness, is for the jury to determine but recognizes that, in some cases, the procedures leading to an eyewitness identification may be so suggestive as to make the identification constitutionally inadmissible as a matter of law. *Foster* v. *California,* 394 U.S. 440, 442 n.2, 89 S. Ct. 1127, 22 L. Ed. 2d 402.

A decision as to the admissibility of identification evidence must be made by the court on an ad hoc basis, and "[t]he required inquiry is two-pronged: first, whether the identification procedure was impermissibly suggestive; and second, if it is found to have been so, whether the procedure had such a tendency to give rise to substantial likelihood of irreparable misidentification that the in-court identification must be excluded." *United States ex rel. Bisordi* v. *LaValle,* 461 F.2d 1020, 1023 (2d Cir.); *United States ex rel. Rivera* v. *McKendricks,* 448 F.2d 30, 32–33 (2d Cir.), cert. denied, 404 U.S. 1025, 92 S. Ct. 678, 30 L. Ed. 2d 675; *United States ex rel. Springle* v. *Follette,* 435 F.2d 1380, 1382 (2d Cir.), cert. denied, sub nom. *Springle* v. *Zelker,* 401 U.S. 980, 91 S. Ct. 1214, 28 L. Ed. 2d 331; *United States*

*ex rel. Phipps* v. *Follette,* 428 F.2d 912, 914–15 (2d Cir.), cert. denied, 400 U.S. 908, 91 S. Ct. 151, 27 L. Ed. 2d 146.

Applying the test so prescribed, a witness may, despite any irregularity or illegality in the procedure of identification from photographs, make an in-court identification if it is purged of the taint of the defective pretrial procedure by establishment of the fact that it is based upon disassociated and independent observation. See *United States* v. *Wade,* 388 U.S. 218, 241, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; *Wong Sun* v. *United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441; *Rudd* v. *Florida,* 477 F.2d 805, 812 (5th Cir.); *State* v. *Oliver,* supra, 356. "The effort must be to determine whether, before the imprint arising from the unlawful identification procedure, there was already such a definite image in the witness' mind that he is able to rely on it at trial without much, if any, assistance from its successor." *United States ex rel. Phipps* v. *Follette,* supra, 915; *United States ex rel. Bisordi* v. *LaValle,* supra, 1024.

We need not determine whether the exigencies of the investigatory process in this case warranted the use of the colored photograph; see *Rudd* v. *Florida,* supra; because even assuming that the procedure was "impermissibly suggestive," we cannot conclude as a matter of law that, under the totality of the circumstances, it was likely to give rise to irreparable misidentification; *Simmons* v. *United States,* supra, 383; *Stovall* v. *Denno,* 388 U.S. 293, 301, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; or make "it all but inevitable" that Michaud would identify the defendant. *Foster* v. *California,* supra, 443.

Significant indicia of the reliability of Michaud's independent recollection are the similarity between the description of the defendant he gave to the police prior to seeing the police photographs and the defendant's own physical characteristics, the one-half hour during which Michaud had the opportunity to observe the robber in a well-lighted area and in close physical proximity prior to and during the commission of the crime, and the positiveness with which Michaud identified the defendant. See *Rudd* v. *Florida,* supra; *United States ex rel. Gonzalez* v. *Zelker,* 477 F.2d 797, 801–802 (2d Cir.); *United States* v. *Coades,* 468 F.2d 1061 (3d Cir.); *United States ex rel. Bisordi* v. *LaValle,* supra, 1024; *United States ex rel. Rivera* v. *McKendrick,* supra; *United States ex rel. Phipps* v. *Follette,* supra; 1 Cripes, Criminal Defense Techniques § 2.15 [4]; Sobel, "Assailing the Impermissible Suggestion: Evolving on the Abuse of Pre-Trial Criminal Identification Methods," 38 Brooklyn L. Rev. 261, 312–18. Michaud's initial inability to select the defendant's photograph from the police book of 150 photographs and the estimate of height went only to the weight of his subsequent in-court identification and did not require its exclusion. *Foster* v. *California,* supra; *Franklin* v. *State,* 18 Md. App. 651, 670, 308 A.2d 752.

The evidence printed in the appendices to the briefs amply supports the finding of the court as to the facts relative to the court's ruling and its conclusions that the photograph identification procedure was not impermissibly suggestive, that the in-court identification of the defendant was not based upon or tainted by the prior photograph identification, and, most importantly, that that identification was based upon the victim's recollection of the de-

fendant and his characteristics and features which he observed during the period of the commission of the crime. The court did not err in admitting the in-court identification evidence and in light of that evidence there clearly was no error in the ruling of the court denying the defendant's motion to set aside the verdict.

There is no error.

In this opinion the other judges concurred.