STATE OF CONNECTICUT *v.* MICHAEL C. REDDICK
(14336)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

*(One justice dissenting)*
Argued September 22, 1992—decision released January 26, 1993

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom were *Mary M. Galvin,* state's attorney, and, on the brief, *Russell L. Case,* law student intern, for the appellee (state).

BORDEN, J. The defendant, Michael Reddick, appeals[1] from the judgment of conviction, after a jury trial, of robbery in the second degree in violation of General Statutes (Rev. to 1989) § 53a-135,[2] and, following a plea of nolo contendere, of being a persistent dangerous felony offender in violation of General Statutes (Rev. to 1989) § 53a-40 (a).[3] The defendant claims that the trial court improperly: (1) failed to notify him of the

[1] The defendant initially appealed to the Appellate Court. General Statutes §51-199 (b) (3), however, provides: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, *including any persistent offender status,* for which the maximum sentence which may be imposed exceeds twenty years . . . ." (Emphasis added.) Although the defendant's underlying conviction was for robbery in the second degree, a class C felony, his conviction as a persistent dangerous felony offender subjected him to a sentence of imprisonment "for a class A felony." See General Statutes § 53a-40. Therefore, his appeal should have been brought directly to this court pursuant to § 51-199 (b) (3). Accordingly, we transferred the appeal to this court pursuant to Practice Book § 2003.

[2] General Statutes (Rev. to 1989) § 53a-135 provides: "ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

[3] General Statutes (Rev. to 1989) § 53a-40 (a) provides in pertinent part: "A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1) . . . ."

contents of the second part of the substitute information charging him with being a persistent dangerous felony offender; (2) with regard to the charge of robbery in the second degree, failed to instruct the jury that it must unanimously agree beyond a reasonable doubt on the same aggravating factor; and (3) denied the defendant's request to waive his presence at a hearing on his motion to suppress a witness' photographic identification of him. We affirm the judgment.

The jury reasonably could have found the following facts. On January 24, 1990, Edward Singer and the defendant, both black men, entered a branch office of the Bank of Boston on Orange Avenue in West Haven. After stopping at a counter, Singer and the defendant approached two teller windows that were closed. Singer handed a bank employee, William Murray, a slip of paper. Murray informed the men that he was not a teller. Singer and the defendant then approached the teller window of Sheila Carlquist. Brunilda Lopez, the teller supervisor, was standing behind Carlquist. Lopez had been trained to remain calm and to observe carefully any suspicious activity. Lopez observed that Singer and the defendant were whispering to Carlquist, and that the two men were sweating and acting nervously. Lopez later described Singer to investigating officers as 5 feet 8 inches to 6 feet 2 inches tall, and the defendant as approximately 5 feet 4 inches tall and wearing wide rimmed plastic glasses. The defendant stared at Lopez as she observed both men.

Singer displayed a gun and threatened Carlquist. The defendant then demanded the money in the teller's drawer. Carlquist gave the money to the defendant, along with a dye pack set to explode if taken from the bank's premises.[4] Singer and the defendant left the

---

[4] A dye pack is an exploding device that is designed to appear as a wad of money but releases red dye.

bank and attempted to flee in a motor vehicle. Lopez saw the dye pack explode, and saw both men escape from the vehicle and flee on foot. Singer was arrested within one hour of the robbery, and subsequently implicated the defendant. Among the evidence recovered at the bank during the police investigation was the slip of paper handed to Murray. The slip of paper had the name "Reddick" printed on its face.

On February 7, 1990, Federal Bureau of Investigation agents located the defendant in a third floor apartment in Hamden. The defendant attempted to avoid arrest by leaping from a window across an alley to the roof of an adjoining building. The defendant was apprehended after a short chase.

## I

The defendant first claims that he is entitled to a new trial on the second part of the information, charging him with being a persistent dangerous felony offender, because the clerk failed, in violation of Practice Book § 648, to notify him of the contents of the second part of the information. Practice Book § 648 provides: "Prior to the time the defendant enters a guilty plea or, if the defendant pleads not guilty, prior to the commencement of the trial, the clerk shall notify the defendant, in the absence of the judicial authority, of the contents of the second part of the information. The clerk shall enter on the docket the time and place of the giving of such notification and, where necessary, shall include entry thereof in the judgment file."[5]

---

[5] Practice Book § 619 provides: "FORMER CONVICTION

"Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein

We disagree that the clerk's failure entitled the defendant to a new trial.

The record in the present case reveals that the defendant repeatedly received actual notice of the persistent dangerous felony offender charge prior to the trial on the underlying charge. On February 5, 1991, the state notified the court at a pretrial hearing, in the presence of the defendant and his attorney, that the defendant was charged with both robbery in the second degree and with being a persistent dangerous felony offender. The defendant himself also indicated to the court that he was fully aware of the contents of the second part of the information. On February 6, 1991, while addressing the court regarding removal of his court appointed attorney, the defendant demonstrated that he was on notice of the persistent dangerous felony offender charge: "Because of the nature of the charges, the fact that the state is *pursuing persistent offender here,* I believe I have a right to make sure that counsel is prepared . . . the nature of the charges [is] very serious. The state is *pursuing persistent offender* . . . I think that [the state's attorney] has pursued this very seriously and she has been the one who has presented the issue of *persistent offender.*" (Emphasis added.) Finally, on February 20, 1991, after the defendant had moved for a bill of particulars, the state replied that there was a long form information supplemented by a second part of the information charging the defendant with being a persistent dangerous felony offender. The defendant's counsel there-

such conviction was obtained and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Sec. 618."

Practice Book § 647 provides: "TAKING OF PLEA

"Where the information is in two parts pursuant to Sec. 619 and alleges, in addition to the principal offense charged, a former conviction or convictions, the plea and the election of a method of trial shall first be taken only on the first part of the information."

after requested a copy of the second part of the information from the court.

Despite the defendant's actual notice of the persistent dangerous felony offender charge prior to trial, he still claims that the clerk's failure to comply completely with the particular notice provisions of Practice Book § 648 entitles him to a new trial. We note, however, that the defendant, having had actual notice of the contents of the second part of the information, did not contest the persistent dangerous felony offender charge. Instead, he pleaded nolo contendere to it. The general rule is that, absent a statutory exception, a plea of guilty or nolo contendere constitutes a waiver of all defects in the prosecution except those involving the canvass of the plea and the court's subject matter jurisdiction. See, e.g., *McMann* v. *Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Lott* v. *United States*, 367 U.S. 421, 81 S. Ct. 1563, 6 L. Ed. 2d 940 (1961); *State* v. *Madera*, 198 Conn. 92, 97, 503 A.2d 136 (1985). This waiver is fatal to the defendant's claim and he therefore is not entitled to a new trial on the second part of the information.

## II

The defendant next claims that the trial court improperly failed to instruct the jury that, in order to find robbery in the second degree to have been proven beyond a reasonable doubt, it had to agree unanimously on one of the aggravating factors that distinguishes robbery in the second degree from robbery in the third degree. This claim is without merit.

The following facts are relevant to this claim. In instructing the jury as to the elements of robbery in the second degree, the trial court first read the text of § 53a-135 to the jury. After defining robbery generally, the trial court explained that the state's information alleged both of the aggravating factors, pursuant to

§ 53a-135, that could elevate the crime of robbery in the third degree to robbery in the second degree.

The trial court then instructed the jury: "[The n]ext element you must find for robbery in the second degree . . . is that, one, he is aided by another person actually present, or, two, in the course of the commission of the crime or immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument. The state claims that it has proven both of these ways of committing robbery in the second degree. . . . If you find, beyond a reasonable doubt, that a robbery was committed by the defendant, and he was, one, aided by another person actually present, who would be Edward Singer, or, two, in the course of the commission of the crime or immediate flight therefrom he or another who participated in the crime displayed or threatened the use of what he represented by his words or conduct to be a deadly weapon or dangerous instrument, you will return a verdict of guilty of robbery in the second degree." The trial court did not explicitly instruct the jury that it must find unanimously that one of the aggravating factors was proven beyond a reasonable doubt. The trial court, however, did instruct the jury four times that its verdict must be unanimous.

The defendant did not preserve this claim at trial. He contends, however, that he should prevail under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). Specifically, the defendant claims that the trial court's failure to give a specific instruction that the jury must unanimously agree that the same aggravating factor had been proven beyond a reasonable doubt violated his sixth amendment right[6] to the unanimous verdict

---

[6] The United States Supreme Court has recently stated that a defendant's right to a unanimous verdict is properly characterized as a due pro-

of a six member jury.[7] See *Burch* v. *Louisiana,* 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979).

As we have previously held, a specific unanimity charge is not constitutionally required in every case in which criminal liability is premised on alternative subsections of a statute. *State* v. *Famiglietti,* 219 Conn. 605, 619–20, 595 A.2d 306 (1991); *State* v. *Jennings,* 216 Conn. 647, 662–63, 583 A.2d 915 (1990); see also *Schad* v. *Arizona,* 501 U.S.    , 111 S. Ct. 2491, 2499, 115 L. Ed. 2d 555 (1991) ("[i]f a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime," the jury need not indicate on which of the alternatives it has based the defendant's guilt); *United States* v. *Schiff,* 801 F.2d 108, 114–15 (3d Cir. 1986), cert. denied, 480 U.S. 945, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987) (a general instruction on unanimity is sufficient to ensure that a unanimous verdict is reached). In *State* v. *Famiglietti,* supra, 619, we set forth a "multipartite test to review a trial court's omission" of a specific unanimity charge. "We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." Id., 619–20.

cess right rather than a sixth amendment right. See *Schad* v. *Arizona,* 501 U.S.    , 111 S. Ct. 2491, 2498 n.5, 115 L. Ed. 2d 555 (1991).

[7] In light of the defendant's failure to brief or analyze independently any state constitutional protections, we limit our discussion to the relevant federal constitutional claim. *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

In the present case, the defendant contends that, unless the trial court specifically instructs the jury that it must find unanimously that one of the aggravating factors was proven beyond a reasonable doubt, the court has implicitly sanctioned a nonunanimous verdict in violation of his sixth amendment right. This contention, however, directly conflicts with our decision in *State v. Anderson,* 211 Conn. 18, 35, 557 A.2d 917 (1989), in which we held that the court must inquire into the conceptual distinction between the alternative acts charged, and whether the state had presented evidence to support each alternative act, *only if* the trial court *expressly* sanctioned a nonunanimous verdict. See *United States v. Bolts,* 558 F.2d 316, 326 n.4 (5th Cir. 1977), cert. denied, 434 U.S. 930, 98 S. Ct. 417, 54 L. Ed. 2d 290 (1978). Contrary to the defendant's contention, the absence of language expressly sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test. Review of the transcripts in this case does not reveal any jury instruction that expressly sanctioned a nonunanimous verdict. Because the trial court did not sanction a nonunanimous verdict we need not address the other parts of the *Famiglietti* test. Indeed, given the four unanimity instructions actually given by the trial court, we must presume that the jury, "in the absence of a fair indication to the contrary . . . followed the court's instruction as to the law." *State v. Gabriel,* 192 Conn. 405, 416, 473 A.2d 300 (1984). We conclude, therefore, that the defendant cannot prevail on this claim under *State v. Golding,* supra.

III

The defendant's final claim is that the trial court improperly denied his motion to waive his presence at the hearing on his motion to suppress certain identification testimony of a state's witness. We disagree.

The following facts are relevant to this claim. On the day following the bank robbery, West Haven police presented to Lopez a photographic array consisting of twelve photographs of black males. Lopez immediately and positively identified a photograph of the defendant as that of the shorter man whom she had observed robbing the bank.

Prior to trial, the defendant had filed written motions on two separate occasions[8] requesting that *"any eyewitness identifications, or any photographic identifications, made of the defendant,* be suppressed *in any and all proceedings against the defendant,* and that any witness making an identification not be permitted to make *an in-court identification concerning the defendant,* because of the prejudicial method of confrontation between the defendant, and/or his photograph." (Emphasis added.) Jury voir dire began on February 6, 1991.

By February 20, 1991, four jurors had been selected. Before continuing with the voir dire, the defendant made three motions: (1) for a mistrial; (2) "to start the trial anew"; and (3) for a two week continuance. After the court denied these motions, the voir dire continued and the rest of the jurors were selected. The court then considered seven of nine other motions filed by the defendant. By the end of the day, the only motions remaining for the court's consideration were the defendant's motion to suppress his prior criminal record, which had been argued but not decided, and his motion to suppress identification, which the court scheduled for the next morning.

---

[8] The first motion to suppress was filed on June 14, 1990, and the second was filed on October 20, 1990. Although the defendant filed two such motions, because they both sought the same relief we treat them as one motion.

On the morning of February 21, 1991, the court ruled on the motion to suppress the defendant's prior criminal record. The court then considered the defendant's motion to suppress identification. The defendant's counsel then moved, pursuant to Practice Book §§ 967[9] and 970 (5)[10] to waive the defendant's presence in the courtroom during the hearing on his motion to suppress identification. The stated basis of the motion to waive the defendant's presence was that, because Lopez would be coming into the courtroom "[knowing] that she is coming in to identify a black man," and because the defendant would be "the only black man in this courtroom," the witness would "have no choice but to point her finger at [the defendant], who is sitting to my left."[11]

---

[9] Practice Book § 967 provides: "RIGHT OF PRESENCE

"The defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, at the trial, and at the sentencing hearing, except as provided in Sec. 966. Whenever present, the defendant shall be seated where he can effectively consult with his counsel and can see and hear the proceedings. An incarcerated defendant or an incarcerated witness shall not be required during the course of a trial to appear in court in the distinctive attire of a prisoner or convict."

[10] Practice Book § 970 provides in part: "A defendant need not be present in the following situations . . .

"(5) In proceedings in which the defendant otherwise waives his right to be present."

[11] The defense counsel stated in full at this point: "Your Honor, at this time, I would make a motion to have [the defendant] excluded from the courtroom. I'm basing my claim for submission on the Practice Book Sections 967 and 970. I have discussed this thoroughly with [the defendant]. [He is in] full agreement with me and would like to waive his presence at this evidentiary hearing.

"Your Honor . . . I believe if we turn around, look at everyone in the courtroom, he is obviously the only black man in this courtroom. *Miss Lopez is going to come in. She knows that she is coming in to identify a black man. She'd have no choice but to point her finger at [the defendant], who is sitting to my left.*

"*Put it in [the defendant's] own words, he is a lame duck sitting over here. We feel as though . . . she obviously will have no choice but to see [the defendant].*

"*I may see the defendant, sure . . . I'm sitting right at defense counsel table. He is black. Only black man in the courtroom. Therefore, we respect-*

The state objected on the basis that, the jury having been selected, the hearing on the motion was "basically in the course of trial," that it was an evidentiary motion, and that it was "necessary as part of the motion to establish that the defendant is in fact the person identified. So that his presence is necessary, and I believe that the state also has a right to his presence."[12]

The court then clearly indicated its understandings that (1) for practical purposes the motion not only was evidentiary but also essentially a trial proceeding, (2) the witness would be asked in the course of the hearing on the defendant's motion to identify the defendant in the courtroom, and (3) the court would be required by the defendant's motion to rule on the admissibility, not only of the out-of-court photographic identification, but also of an in-court identification as well. The court also clearly indicated, therefore, that it was "not going to exclude [the defendant] from the courtroom."[13]

---

*fully request the court to allow [the defendant] to be seated in the holding area prior or during the . . . proceeding of the suppression motion.*

*"Again, I'm basing this request on the Practice Book, specifically Section 967, which deals with the presence of the defendant . . . where presence is not required. And I would specifically state Section 970 subsection 5 . . . [which] specifically states, 'In proceedings in which the defendant otherwise 'waives his right, the defendant, through counsel,' respectfully 'waives his right to be present during this proceeding.' "* (Emphasis added.)

[12] The state's attorney responded: "I would object to that, your Honor. I believe the state does have a right to the defendant's presence. This is an evidentiary motion. It is not an argument on a legal matter.

"We are—we picked a jury. *These motions are basically in the course of trial. They are evidentiary motions, not legal motions, and it is necessary as part of the motion to establish that the defendant is in fact the person identified.* So that his presence is necessary, and I believe that the state also has a right to his presence. . . . So I would ask the court to require him to be present." (Emphasis added.)

[13] The court stated: "Yes. *I think the unique circumstances here are a motion for identification.* . . . [The Practice Book] doesn't create any abso-

At that point, the defendant indicated that, although he was "adopting this motion," he added as a "further basis of [his] claim" that his "intent here would be to attack the procedure that was used in previous identifications. Not an in-court identification right now."[14]

The court then responded by (1) indicating its understandings that the defendant's motion to exclude was addressed to the court's discretion, and that it was

lute right not to be present. In fact, usually there is a very strong protection and insistence that the defendant be present *during the trial.*

"And I agree with the state's attorney. This is an evidentiary-type hearing. *This could just as well come up in the middle of the trial* as it could as a pretrial motion. *And I don't know how someone can possibly identify anyone without having two things to compare, the individual and somebody else, either in personal observation or photograph or something. I don't know how it is possible in many cases to make an identification without having the person present to identify.*

"There are certain safeguards. And the court will consider how the identification is made and all that, and various other matters, in order to decide whether or not the identification evidence should come in. *But I think this has to be something for me to observe here for me to make a ruling on this in terms of ability or lack of ability of the witness to identify the defendant. Also how the identification occurs. . . .*

"We'll follow those safeguards. I am not going to try [sic] the defendant waived his right. *Despite that fact, I am not going to exclude him from the courtroom.* I assume when you do this identification examination, you are going to—before you get into identify the defendant—you are going to get into all the other whatever prior identifications have occurred and how they occurred *before we get to the question of identifying him specifically.* I assume that's what you're going to do.

"[The State]: Yes your Honor." (Emphasis added.)

[14] The defense counsel stated: "Your Honor, that would probably—*further basis of my claim—my subsequent—I'm adopting this motion, I believe was [former defense counsel's] motion—my intent here would be to attack the procedure that was used in previous identifications. Not an in-court identification right now.*

"And this may or may not be termed an evidentiary proceeding as the state suggests. However, the wording in [Section] 970 subsection 5 states: 'In proceedings in which the defendant otherwise waives his right.' This is obviously the proceeding, your Honor. And, again, we would respectfully request [the defendant] be placed in the holding area." (Emphasis added.)

required to rule on the written motion to suppress pending before it, and (2) asking the state whether it could proceed on the defendant's motion to suppress "without having some identification of [the defendant] at counsel table." When the state responded that "the only way [that it could] conduct this hearing is with the defendant present," the court acknowledged that it would "have to accept [the state's position] with this type of a motion." The court then formally denied the defendant's motion to exclude.[15] The defendant did not subsequently propose, however, any other courtroom procedure that would have lessened the apparent suggestiveness of his being the only black male in the courtroom, such as his sitting away from the defense table or having men of similar physical characteristics present in the courtroom.

The state then called Lopez as its first witness on the motion to suppress. She testified that, on the day after the bank robbery, she had positively identified, from a photographic array, a photograph of the defendant as the shorter of the two black males who had robbed the bank. The state also asked her whether *"based on your observations of the short black male at the bank that day,* do you think you would recognize

---

[15] The court stated: "[The] Rule says 'He need not be present,' which indicates discretion on the part of the court as to whether he is present, whether he waives it or not.

*"I might be more inclined to go along with it [on] some other type of motion.* At some point, is it possible, Miss Galvin [State's Attorney], for you to conduct this without having some identification of him at counsel table? That possible? . . .

"[The State]: Your Honor . . . I don't think I can properly make up a hearing. I also, if the court is considering doing this, I did indicate earlier I'd like an opportunity—I think there is case law on this topic, but I do feel that the only way I can properly conduct this hearing is with the defendant present.

"The Court: All right, since you have that position, I think I have to accept it with this type of a motion. So the motion to exclude the defendant from the courtroom during the proceedings is denied." (Emphasis added.)

him if you saw him again?" (Emphasis added.) After she replied, "I think so," she made a positive in-court identification of the defendant as "the man who was the short male who robbed the bank that day." Thereafter, the trial court ruled that the photographic identification of the defendant by Lopez had not been unduly suggestive.[16] The trial court denied the defendant's motion to suppress.

Thereupon, on the same day, the jury was sworn and the state began to present its evidence. Lopez was the first state's witness. She testified to her positive photographic identification of the defendant and also made a positive in-court identification of the defendant as the shorter of the two bank robbers.

With this procedural background in mind, we turn to the defendant's claims regarding the denial of his motion to exclude him from the hearing on his motion to suppress. At the outset, however, it is useful to clarify what this record does not support.

First, the record does not support the assertion, upon which both the defendant and the dissent rely, that the hearing on the defendant's motion to suppress identification was a pretrial hearing. Although the defendant had made his motions pretrial, the record establishes that for all practical purposes the hearing was held after the trial had begun. For purposes of our speedy trial rules, " 'commencement of trial' means the commencement of the voir dire examination in jury cases . . . ." Practice Book § 956E; see *State* v. *Suggs*, 209 Conn. 733, 749–50, 553 A.2d 1110 (1989); *State* v. *Welch*, 25 Conn. App. 270, 273, 594 A.2d 28, reversed in part on other grounds, 224 Conn. 1, 615 A.2d 505 (1992). In this case, the jury had already been selected, and the motion to suppress was the last of the defend-

---

[16] The defendant does not challenge this ruling on appeal.

ant's pretrial motions to be acted upon before the jury was sworn and evidence began to be presented on the same day. Moreover, it is clear that the trial court, without contradiction by the defendant, considered the motion and the hearing thereon as trial matters involving evidentiary issues.[17] The state had argued that "we picked a jury. These are basically in the course of trial. They are evidentiary motions, not legal motions." The court responded: "[U]sually there is a very strong protection and insistence that the defendant be present during the trial. And I agree with the state's attorney. This is an evidentiary-type hearing. This could just as well come up in the middle of the trial as it could as a pretrial motion."

Second, the record does not support the assertion, also relied upon by the defendant and the dissent, that the scope of the hearing on the defendant's motion to suppress his identification was limited to the alleged suggestiveness of the out-of-court photographic identification by Lopez and did not include any determination by the trial court of the admissibility of Lopez's anticipated in-court identification of him as well. The subject of the hearing was the defendant's two pretrial written motions to suppress, which specifically sought to suppress evidence, not only of the photographic identification, but of any "in-court identification concerning the defendant." Both motions specifically applied not only to any purported pretrial proceeding, but to "any and all proceedings against the defendant," including, of course, the presentation of evidence before the jury.

Furthermore, it is clear that all the participants in the hearing—the defendant, the state and the court— understood that one of the principal functions of the

---

[17] Indeed, the defendant had earlier implicitly recognized that the trial had begun, when he moved for a mistrial and "to start the trial anew."

hearing would be to examine, not only the pretrial photographic identification by Lopez, but her in-court identification of him as well. At the very outset of the argument on his motion to preclude, defense counsel stated that Lopez "is going to come in. She knows that she is coming in to identify a black man. She'd have no choice but to point her finger at [the defendant], who is sitting to my left." The state echoed this understanding: "[I]t is necessary as part of the motion to establish that the defendant is in fact the person identified. So that his presence is necessary . . . ." The court expressed the same understanding: "Yes. I think the unique circumstances here are a motion [to suppress] identification. . . . And I don't know how someone can possibly identify anyone without having two things to compare, the individual and somebody else, either in personal observation or photograph or something. I don't know how it is possible . . . to make an identification without having the person present to identify. . . . And the court will consider how the identification is made . . . in order to decide whether or not the identification evidence should come in. But I think this has to be something for me to observe here for me to make a ruling on this in terms of ability or lack of ability of the witness to identify the defendant[18]

---

[18] As support for its theory that the hearing on the motion to suppress only concerned the pretrial photographic identification, the dissent seizes on defense counsel's sole statement that "my intent here would be to attack the procedure that was used in previous identifications. Not an in-court identification right now." That theory is untenable. It simply ignores the facts that: (1) the defendant's two written motions, which were the motions before the court, were squarely to the contrary and sought suppression of Lopez's in-court identification of the defendant; (2) the statement was contrary to the defendant's initial recognition that the motion to suppress was aimed at that in-court identification, and was not made until after the court had clearly indicated its position on the motion to exclude; (3) the statement itself was offered, not as a substitute for the written motions, but as a "further basis" for his claim of exclusion, and was made in the context of the defendant's "adopting this [written] motion [to suppress]"; and (4) after two weeks of jury selection, the evidentiary phase of the trial was

. . . I would be inclined to go along with [the defendant's motion to exclude on] some other type of motion . . . [but not] with this type of motion. So the motion to exclude the defendant from the courtroom during the proceedings is denied."[19] Consistent with those understandings, during the course of the hearing the state elicited Lopez's in-court identification of the defendant, without any claim by the defendant that to do so was beyond the scope of his motion to suppress.

On this record, the defendant claims that the trial court's denial of his motion to waive his presence in the courtroom violated his federal[20] and state[21] due process rights.[22] The defendant also claims that even if the denial of his motion did not result in constitutional error, the trial court abused its discretion under Prac-

about to begin as soon as the motion to suppress had been disposed of, and Lopez's in-court identification of the defendant would obviously be an important part of the state's case. In context, therefore, the defendant's motion to absent himself must be appraised within the totality of the motions before the court at trial.

[19] The dissent, relying on some language in the state's brief that it takes to be a concession by the state regarding the scope of the hearing, states that it is "only the majority of this court that has come up with the theory that the intent at the pretrial hearing was to suppress an in-court identification before the jury." Even if we were to read the language in question as such a concession, we are not bound by ill advised concessions of any party; see, e.g., *State* v. *Putnoki,* 200 Conn. 208, 219 n.6, 510 A.2d 1329 (1986); particularly where, as in this case, the record not only does not support the concession but clearly indicates to the contrary. Justice does not require that we turn a blind eye to the trial record in adjudicating claims on appeal.

[20] Although the defendant cites to the fifth amendment's due process clause, presumably the intended reference was to the fourteenth amendment's due process clause. The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

[21] The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[22] The defendant offers no separate analysis of his state constitutional claim. Accordingly, we limit our analysis to federal constitutional law.

tice Book § 970 (5). Specifically, the defendant contends that the trial court abused its discretion because the denial of the defendant's motion to waive his presence: (1) did not serve any state interest; and (2) created an impermissibly suggestive pretrial identification, and allowed the witness an opportunity to rehearse her subsequent in-court identification of the defendant. These contentions are untenable.

## A

It is undisputed that a criminal defendant has a right under the sixth amendment's confrontation clause to be *present* at critical stages of his prosecution. *Diaz* v. *United States,* 223 U.S. 442, 32 S. Ct. 250, 56 L. Ed. 2d 500 (1912); *Lewis* v. *United States,* 146 U.S. 370, 13 S. Ct. 136, 36 L. Ed. 2d 1011 (1892); *State* v. *Gonzalez,* 205 Conn. 673, 688, 535 A.2d 345 (1987). The defendant in the present case, however, is unable to cite, nor has our research revealed, a single authority that holds that a defendant has a *constitutional* right to waive his presence at any stage of the prosecution. Indeed, federal courts have held that a trial court, pursuant to rule 43 of the Federal Rules of Criminal Procedure,[23] has the right and the obligation to compel the defendant's presence at all stages of a trial. *United States* v. *Cannatella,* 597 F.2d 27 (2d Cir. 1979); *United States* v. *Moore,* 466 F.2d 547, 548 (3d Cir. 1972), cert. denied, 409 U.S. 1111, 93 S. Ct. 920, 34 L. Ed. 2d 692 (1973) (rule 43 does not vest a right of absence in a defendant; fifth amendment right against self-incrimination is not violated by compelling the defendant's presence). No reported case has held that rule 43 is unconstitutional or violates a defendant's alleged right to be absent from criminal proceedings.

[23] Rule 43 of the Federal Rules of Criminal Procedure provides in relevant part: "The defendant shall be present at the arraignment . . . at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. . . ."

The defendant principally relies on two cases to support his claim that a criminal defendant has a constitutional right to waive his presence: *United States* v. *Johnson,* 859 F.2d 1289 (7th Cir. 1988); and *Singletary* v. *United States,* 383 A.2d 1064 (D.C. App. 1978). In *United States* v. *Johnson,* supra, the Seventh Circuit Court of Appeals held that a criminal defendant need not be present at a pretrial hearing on a motion to suppress a previous photographic identification of the defendant by an eyewitness to the crime. *United States* v. *Johnson,* supra, however, does not support the defendant's position for several reasons. First, the defendant in that case did not move in the trial court to waive his presence at the hearing, but, in fact, was challenging on appeal his *absence* from the hearing. The court held that his absence from the pretrial hearing did not violate his sixth amendment right to be present at all critical stages of the proceedings. Second, the court reasoned that his presence was not required because the particular hearing was limited to the sole issue of whether the prior photographic identification would be admissible at trial, and did not include the ordinarily necessary inquiry into whether, if the trial court found that the photographic identification was unduly suggestive, the witness' subsequent in-court identification of the defendant would nonetheless be reliable under the totality of the circumstances. Id., 1292, 1294; see *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) (under totality of circumstances, reliability of an unduly suggestive identification is linchpin of admissibility). The court recognized that if a pretrial suppression hearing is limited to the sole issue of the admissibility of previous photographic identification, the defendant's presence is not essential. Nowhere in the decision is there any claim by the defendant, or any suggestion by the

court, that a defendant has a constitutional right to be absent from such a proceeding.

Similarly, the decision of the District of Columbia Court of Appeals in *Singletary* v. *United States,* supra, does not support the defendant's contention that he had a constitutional right to be absent from the suppression hearing. In *Singletary,* the defendant claimed that the "trial court erred when it refused to allow him to waive his right to be present during the testimony of the [witness] . . . ." *Singletary* v. *United States,* supra, 1069–70. The appellate court held that the defendant had a tactical right to waive his right to be present at the pretrial suppression hearing "in a case such as this in which no legitimate interests of the government . . . would have been prejudiced . . . ." Id., 1070.

Nowhere in *Singletary,* however, does the court indicate the source of this tactical right. In the absence of a full analysis of the source of this right, or reference to any constitutional provision, we do not read *Singletary* to support the defendant's claim that he has a constitutional right to waive his presence at such a suppression hearing. Additionally, the *Singletary* court limited its creation of this "right" to cases in which no interest of the government would be prejudiced by the defendant's absence.

Nor does the defendant offer any persuasive reason supporting his claim of a constitutional right of absence under the circumstances of this case. Indeed, as our subsequent analysis reveals, if the defendant moves to suppress both the out-of-court identification and any subsequent identification at trial, as the defendant did in this case, the state has a legitimate interest in the presence of the defendant at the hearing on the motion to suppress. We therefore conclude that the defendant had no constitutional right to be absent from the hearing on his motion to suppress.

## B

Because the defendant has not demonstrated that the denial of his motion to exclude himself from the suppression hearing denied him any constitutional rights, we turn to his additional claim that the trial court abused its discretion in denying his motion pursuant to Practice Book § 970 (5). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Holmquist,* 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977).

The defendant first argues that the trial court's denial of the motion to exclude constituted an abuse of discretion because no legitimate state interest was served by compelling the defendant's presence at the hearing. We disagree.

In the present case, the defendant moved to suppress both the photographic identification of the defendant and any subsequent in-court identification by the same witness. The defendant's motion to suppress required the trial court to undertake a two part inquiry in order to ascertain whether the admission at trial of the photographic identification, along with any subsequent in-court identification, violated the defendant's due process rights. *State* v. *Howard,* 221 Conn. 447, 453, 604 A.2d 1294 (1992).

The trial court first was obligated to determine whether the photographic array was unnecessarily suggestive. If the photographic array was found to be unduly suggestive, the court would then be required

to determine, pursuant to *Manson* v. *Brathwaite,* supra, 114, and its progeny; *State* v. *Findlay,* 198 Conn. 328, 339–40, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Perez,* 198 Conn. 68, 76, 502 A.2d 368 (1985); *State* v. *Gold,* 180 Conn. 619, 655, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Piskorski,* 177 Conn. 677, 744–45, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); whether the unduly suggestive identification itself, *and any subsequent in-court identification,* were nonetheless reliable based on an examination of the totality of the circumstances. *State* v. *Findlay,* supra; *State* v. *Perez,* supra; *State* v. *Gold,* supra; *State* v. *Piskorski,* supra.

In proving that a subsequent in-court identification is reliable under the totality of the circumstances, the state is entitled to demonstrate that, even though the out-of-court identification was unnecessarily suggestive, a witness' in-court identification is "based upon disassociated and independent observation. See *United States* v. *Wade,* 388 U.S. 218, 241, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 [1967]. *State* v. *Smith,* [165 Conn. 680, 685, 345 A.2d 41 (1974)]. The effort must be to determine whether, before the imprint arising from the unlawful identification procedure, there was already such a definite image in the witness' mind that he is able to rely on it at trial without much, if any, assistance from its successor. [*State* v. *Smith,* supra.]" (Internal quotation marks omitted.) *State* v. *Piskorski,* supra, 741–42. The witness' current degree of certainty regarding whether the defendant is the person she saw at the time of the crime is relevant to that inquiry. *State* v. *Gold,* supra, 651.

In the present case, because the defendant had requested that the trial court suppress both the photographic identification and any subsequent identifica-

tion of the defendant at trial, the state had a legitimate interest in the defendant's presence at the suppression hearing.[24] It was entitled to establish that, even if the trial court had determined the photographic identification to have been unnecessarily suggestive, Lopez's in-court identification was nonetheless untainted by that suggestiveness. *State* v. *Findlay,* supra, 339; *State* v. *Gold,* supra, 657–58; *State* v. *Piskorski,* supra, 744. That is precisely what the state sought to do in the course of the hearing by asking Lopez whether she could identify the defendant based upon her observation of him at the bank at the time of the robbery.

The propriety of the court's action on the defendant's motion to exclude must be gauged at the time it made its ruling. Thus, despite the dissent's argument to the contrary, it is irrelevant that the court ultimately ruled that the photographic identification was not suggestive. That ruling, which made any claim regarding the in-court identification moot, could not have been anticipated when the defendant sought to exclude himself from the courtroom. Thus, when the court made its ruling on the motion to exclude, both the state and the court were entitled to anticipate that a determination might have had to be made regarding whether any unnecessarily suggestive taint was nonetheless overcome by the reliability of the in-court identification based on the independent recollection of Lopez at the time of the robbery. That determination, in turn, required the presence of the defendant in the courtroom.

Indeed, it is clear from this record that, at the time the trial court made its ruling on the defendant's motion to exclude, the trial court understood that it was faced with a motion to suppress an in-court identification by the witness who was about to testify. Thus, the court

[24] We note that the defendant did not request that the trial court exclude the defendant only if and when the trial court found that the photographic identification was unduly suggestive.

realized that it would have the two part task of deciding (1) whether the photographic identification had been unnecessarily suggestive and, *if it were,* (2) whether the in-court identification, sought to be suppressed by the defendant's motion, was nonetheless admissible because it was not the product of that tainted procedure.

The defendant next argues that the trial court abused its discretion by denying the defendant's motion to waive his presence because the hearing itself created an impermissibly suggestive confrontation, since the defendant, seated at counsel table, was the only black man in the courtroom. As we have noted, the "manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court." *State* v. *Smith,* 200 Conn. 465, 470, 512 A.2d 189 (1986). In such cases, the defendant's " 'protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination' "; *State* v. *Tatum,* 219 Conn. 721, 731, 595 A.2d 322 (1991); or other practical procedures designed to lessen the degree of suggestiveness. Id., 729; *State* v. *Smith,* supra, 471; see *United States* v. *Domina,* 784 F.2d 1361, 1368–69 (9th Cir. 1986), cert. denied, 479 U.S. 1038, 107 S. Ct. 893, 93 L. Ed. 2d 845 (1987) ("procedures [can] be used in court to lessen the suggestiveness, such as an in-court line-up, or having the defendant sit somewhere in the courtroom other than the defense table"); *United States* v. *Brown,* 699 F.2d 585, 593 (2d Cir. 1983).[25]

---

[25] The dissent does not own the corner on the recognition of "the problems of cross-racial identification . . . ." No failure to recognize those problems is implied, however, by applying the established rules of law regarding eyewitness identifications to all defendants, regardless of their races, and relying primarily on the defendant's right of cross-examination to ferret out any infirmities arising from a cross-racial identification. That is particularly true in this case, where the trial record belies both the defendant's claim on appeal and the dissent's argument in support of that claim.

During the suppression hearing, however, the defendant did not propose a less suggestive courtroom identification procedure. He did not request that he sit away from the defense table or that men of similar physical characteristics be present in the courtroom. In the absence of any such request, we cannot characterize the trial court's denial of the motion to waive the defendant's presence as an abuse of discretion.[26] *State* v. *Smith,* supra, 472. Similarly, at trial, the defendant did not avail himself of the significant protections that might have lessened any effect of the suppression hearing confrontation, or "rehearsal," as the defendant characterizes the process. During cross-examination at trial, moreover, the defendant did not ask the witness whether her identification of the defendant during direct examination was prejudiced or affected by her prior identification of the defendant at the pretrial motion to suppress held earlier that day. *State* v. *Tatum,* supra, 731. Nor did the defendant argue at trial that the suggestive nature of the hearing on the pretrial motion to suppress identification impermissibly tainted the witness' identification at trial during direct examination. These considerations add further weight to our conclusion that the trial court's denial of the defendant's motion to waive his presence was not an abuse of discretion.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and NORCOTT, Js., concurred.

BERDON, J., dissenting. Today the majority fails to recognize the problems of cross-racial identification[1]

---

[26] We note that a trial court's denial of a request for a less suggestive in-court confrontation between a witness and a defendant will be overturned only upon a showing of an abuse of discretion. See *State* v. *Smith,* 200 Conn. 465, 512 A.2d 189 (1986), and cases cited therein.

[1] "It is well documented that cross-racial identification is less reliable than identification of one person by another of the same race. '[C]onsiderable

by upholding the trial court's refusal to allow an African-American defendant to waive his presence at a pretrial hearing. The defendant wanted to be excused

evidence indicates that people are poorer at identifying members of another race than of their own. . . . Moreover, counterintuitively, the ability to perceive the physical characteristics of a person from another racial group apparently does not improve significantly upon increased contact with other members of that race. Because many crimes are cross-racial, these factors may play an important role in reducing the accuracy of eyewitness perception.' Note, 'Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification,' 29 Stan. L. Rev. 969, 982 (1977). Elizabeth F. Loftus, in her classic treatise entitled 'Eyewitness Testimony,' wrote that '[i]t seems to be a fact—it has been observed so many times—that people are better at recognizing faces of persons of their own race than a different race.' E. Loftus, Eyewitness Testimony (1979) pp. 136–37. She concluded, on the basis of an examination of studies made on the subject, that '[p]eople have greater difficulty in recognizing faces of another race than faces of their own race.' Id., p. 139." *State* v. *Cerilli*, 222 Conn. 556, 588–89, 610 A.2d 1130 (1992) (*Berdon, J.,* dissenting).

Concern for the problems of cross-racial identification is well documented in our case law as well as by other social scientists. "We are painfully aware of miscarriages of justice caused by wrongful identification. Those experienced in criminal trial work or familiar with the administration of justice understand that one of the great problems of proof is posed by eyewitness identification, *especially in cross-racial identification.* . . . Judge Bazelon, dissenting in *United States* v. *Butler,* 636 F.2d 727 (D.C. Cir. 1980), cert. denied, 451 U.S. 1019, 101 S. Ct. 3010, 69 L. Ed. 2d 392 [1981], observed that many experts have concluded that convictions based solely on one eyewitness identification represent conceivably the greatest single threat to the achievement of our ideal that no innocent men shall be punished." (Emphasis added; internal quotation marks omitted.) *Brown* v. *Davis,* 752 F.2d 1142, 1146 (6th Cir. 1985); see also *Kampshoff* v. *Smith,* 698 F.2d 581 (2d Cir. 1983). "Another important factor to be considered in assessing the reliability of an identification is whether the witness and the person identified are of the same or different races. In general, there is a much greater possibility of error where the races are different than where they are the same. Where they are different, there is more likelihood of error where the suspect belongs to a minority group and the witness to a majority group than there is in the opposite situation. Almost fifty years ago, it was said to be: 'well known that, other things being equal, individuals of a given race are distinguishable from each other in proportion to our familiarity, to our contact with the race as a whole. Thus to the uninitiated American, all Asiatics look alike, while to the Asiatic all white men look alike.' " P. Wall, Eye-Witness Identification in Criminal Cases (2d Ed.) p. 122; A. Yarmey, The Psychology of Eyewitness Testimony (1979) pp. 130–31.

from the courtroom before an identification witness was brought in to testify concerning a previous out-of-court identification of him. The defendant's purpose was to avoid a suggestive, one-on-one confrontation with the witness. Defense counsel articulated his concerns and those of the defendant as follows: "Your honor . . . I believe if we turn around, look at everyone in the courtroom . . . [the defendant] is obviously the only black man in this courtroom. Miss Lopez [the identification witness] is going to come in. She knows that she is coming in to identify a black man. [She would] have no choice but to point her finger at Mr. Reddick [the defendant], who is sitting to my left. Put . . . in Mr. Reddick's own words, he is a . . . [sitting] duck . . . . We feel as though . . . she obviously will have no choice but to see Mr. Reddick."

The majority predicates its decision on the proposition that the defendant was seeking at the pretrial hearing to suppress not only the out-of-court identification, but also any subsequent in-court identification by the witness at trial. We obviously read different records.

As the majority opinion notes, in the months prior to the hearing, the defendant's former counsel filed two generic motions[2] seeking to suppress any identification of the defendant by a witness. Before the court made a definitive ruling, however, trial counsel made it crystal clear that his motion to excuse the defendant from the courtroom during the suppression hearing was limited to the out-of-court identification of the witness. Putting all hyperbole aside, during argument on the oral motion to excuse the defendant, defense counsel stated: "Your honor . . . [a] further basis of my claim . . . [in] adopting this motion, I believe was [former

[2] Neither motion was addressed to the suppression of the identification of any specific witness, but they both sought to suppress all in-court and out-of-court identifications of the defendant by any witness.

defense counsel's] motion—my intent here would be to attack the procedure that was used in previous identifications. *Not an in-court identification* right now." (Emphasis added.) The trial court did not issue a definitive ruling until after this clarification was made by defense counsel. The trial court then denied the defendant's request to absent himself from the courtroom during the proceedings.

It is only the majority of this court that has come up with the theory that the intent of the defendant at the pretrial hearing was to suppress an in-court identification before the jury. Indeed, the state in its brief conceded that the "identification issue concerned a photo array and the admissibility of the photo board as impermissibly suggestive. It did not focus initially on the witness identifying the defendant in court." Subsequently, the state conceded that the trial court also understood that the scope of the motion was limited to the reliability of the out-of-court identification. The state wrote in its brief that "[the trial court] also noted that the thrust of the motion was based on the reliability of the photo identification, and that the identification of the defendant in court was not really at issue. His presence did not affect the reliability of the witness' photo identification. Therefore, the trial court acted well within its discretion when it denied the defendant's request."[3]

---

[3] The majority, however, attaches significance to the fact that defense counsel limited the scope of its motion to suppress shortly after the trial court in its colloquy with defense counsel indicated that it was inclined to deny the motion. Even if defense counsel's clarification had come after the trial court's definitive ruling, the trial court could have corrected its decision if it was made on the erroneous assumption that the motion to suppress incorporated both in-court and out-of-court identifications. Once the clarification was made, justice demanded that the trial court consider whether the defendant could absent himself from the courtroom during that portion of the hearing concerning the admissibility of the photo identification.

The trial court and the majority also attach importance to the claim that this motion was heard during trial, not pretrial; therefore, the defendant

The issue, then, is simply this: Whether the defendant has the right to be excused from a hearing on a pretrial motion to suppress an out-of-court identification in order to avoid a suggestive encounter with the identification witness when the defendant's presence serves no state purpose.

In *Singletary* v. *United States*, 383 A.2d 1064, 1070 (D.C. App. 1978), the court held "that the defendant does have a right to waive his presence at a pretrial suppression hearing in a case such as this in which no legitimate interests of the government or of the defendant would have been prejudiced by the defendant's absence . . . ." Indeed, the state in this case advances no purpose for requiring the defendant's presence at the suppression hearing on the out-of-court identification.

The analysis for determining whether a pretrial identification by a witness is admissible is firmly established. "To determine whether a pretrial identification procedure, such as the photographic array in this case, violated a defendant's due process rights, 'the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the "totality of the circumstances." ' *State* v. *Theriault*, 182 Conn. 366, 371–72,

had no right to be absent from the courtroom. This claim must fail for two reasons. First, from a technical point of view, the trial had not started. Practice Book § 956E, on which the majority relies, is limited to speedy trial analysis. Under double jeopardy analysis, a trial does not begin until the jury has been sworn. *Crist* v. *Bretz*, 437 U.S. 28, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978). The jury may have been selected, but it was not sworn. Second, and more importantly, I can discern no practical consequence for distinguishing between whether it was a pretrial motion or one that would be heard during trial. The point of the matter is that the jury would not participate in either case.

438 A.2d 432 (1980)." *State* v. *Howard,* 221 Conn. 447, 453, 604 A.2d 1294 (1992).

The majority suggests, however, that the defendant's presence was necessary because if the trial court found that the photographic identification was unduly suggestive, it would have been required to determine whether the witness' subsequent in-court identification would nonetheless be reliable under the totality of the circumstances. There are two answers to this unfounded claim. First, the practical: the trial court did not find in this case that the photographic array was unduly suggestive. Second, if the defendant's presence was in fact necessary at any time during the suppression hearing, he could have been available instantly. The defendant made a very simple but critical request—that he be permitted to absent himself to avoid a suggestive encounter with the only eyewitness who could identify him as the culprit.

The only conceivable purpose for requiring the defendant's presence at the pretrial suppression hearing was to carve the defendant's physical characteristics into the mind of the identification witness so she could easily make a later in-court identification before the jury. To be sure, the state's purpose was well served.[4]

---

[4] The following in-court identification occurred during the pretrial hearing:

"[The State]: Miss Lopez, based on your observations of the short black male at the bank that day, do you think you would recognize him if you saw him again?

"[The Identification Witness]: I think so.

"Q. Do you see him in this courtroom today?

"[Defense Counsel]: I object, Your Honor. I believe it's a one-on-one identification. I believe it is unnecessarily suggestive, Your Honor. And, also, it—I am objecting to it due to the fact that our motion to exclude Mr. Reddick from the courtroom was denied.

"The Court: Well, I'm going to overrule your objection. The objection goes to weight, not admissibility. The remarks you made, I will, however, consider on the motion itself.

"[Defense Counsel]: May I have an exception, Your Honor?

The United States Supreme Court's words in *United States* v. *Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), are instructive in this case and bear repeating: "[C]onfrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial. The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927). A major factor contributing to the high incidence of miscarriage of jus-

"The Court: Yes.

"[The State]: Miss Lopez, would you look around the courtroom, and do you see the person, the short person who told Sheila Carlquist to give him the dye pack; do you see him in the courtroom today?

"[The Identification Witness]: Um, yes.

"[The State]: And where do you see him?

"[The Identification Witness]: Sitting right there.

"[The State]: When you say right there, can you tell me what he has on?

"[The Identification Witness]: It's a sky blue jacket.

"[Defense Counsel]: Your Honor, for the record, I will object again. I want the record to be clear that at this point Mr. Reddick is the only black man in the courtroom at the moment.

"[The State]: The record should reflect that it is the defendant she pointed out, I think, Your Honor.

"The Court: Yes, that is reflected.

"[The State]: What is your level of certainty the man you just pointed to in the sky blue jacket is the man who was the short male who robbed the bank that day?

"[The Identification Witness]: Positive.

"[The State]: Thank you. I don't have any further questions."

tice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that '[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.' Wall, Eye-Witness Identification in Criminal Cases 26. Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest." Id., 228–29. The conundrums of suggestive identifications are not lessened because the one-on-one identification is the result of a court order.

It is absolutely clear that the admission of evidence concerning a pretrial identification procedure that was unnecessarily suggestive and resulted in an unreliable identification violates a person's rights to due process under both the federal and state constitutions. See *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *State* v. *Howard,* supra. The due process violation in this case is no less offensive simply because the suggestive identification resulted from the trial court's insistence on the defendant remaining in the courtroom.

The harm caused by the trial court's refusal to excuse the defendant in this case is underscored because the identification witness' description was far from exact. She was the only one of the several persons present at the time of the robbery who could identify the defendant. Accordingly, I would reverse the conviction and remand this case to the trial court for further proceedings.

I agree with the resolution of the notice issue in part I of the majority opinion. I would not reach the jury instruction issue in part II of the majority opinion.