STATE OF CONNECTICUT *v.* MICHAEL SMITH
(AC 18260)

Foti, Landau and Mihalakos, Js.

Argued January 19—officially released April 11, 2000

*William B. Westcott*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Michael Smith, appeals from the judgment of conviction, rendered after a trial to the court, of robbery in the first degree in violation of General Statutes § 53a-134,[1] assault of a victim sixty or older in the first degree in violation of General Statutes § 53a-59a[2] and assault of a victim sixty or older in the

[1] General Statutes § 53a-134 provides: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[2] General Statutes § 53a-59a provides: "(a) A person is guilty of assault of a victim sixty or older in the first degree, when he commits assault in the first degree under section 53a-59 (a) (2), 53a-59 (a) (3) or 53a-59 (a) (5) and the victim of such assault has attained at least sixty years of age or is

second degree in violation of General Statutes § 53a-
60b.[3] He claims that the evidence presented by the state
was insufficient to sustain his conviction. He also claims
that the court abused its discretion in denying his
motion to waive his presence in the courtroom during
the testimony of eyewitnesses. We affirm the judgment
of the trial court.

On the basis of the evidence adduced at trial, the
court reasonably could have found the following facts.
On December 9, 1996, at approximately 5:30 p.m., the
victim, Jean Deich, an eighty-four year old woman, was
to have attended a Christmas party at a restaurant on
Blake Street in New Haven. Deich weighed 105 pounds
and stood four feet, eleven inches tall. As she exited a
vehicle at the sidewalk in front of the restaurant,[4] the
defendant grabbed her pocketbook, punched her in the

blind or physically disabled, as defined in section 1-1f.

"(b) No person shall be found guilty of assault in the first degree and
assault of a victim sixty or older in the first degree upon the same incident
of assault but such person may be charged and prosecuted for both such
offenses upon the same information.

"(c) Assault of a victim sixty or older in the first degree is a class B felony
and any person found guilty under this section shall be sentenced to a term
of imprisonment of which five years of the sentence imposed may not be
suspended or reduced by the court."

[3] General Statutes § 53a-60b provides: "(a) A person is guilty of assault
of a victim sixty or older in the second degree when he commits assault in
the second degree under section 53a-60 or larceny in the second degree
under section 53a-123 (a) (3) and the victim of such assault or larceny has
attained at least sixty years of age or is blind or physically disabled, as
defined in section 1-1f.

"(b) No person shall be found guilty of assault in the second degree or
larceny in the second degree under section 53a-123 (a) (3) and assault of
a victim sixty or older in the second degree upon the same incident of
assault or larceny, as the case may be, but such person may be charged
and prosecuted for all such offenses upon the same information.

"(c) Assault of a victim sixty or older in the second degree is a class D
felony and any person found guilty under this section shall be sentenced
to a term of imprisonment of which two years of the sentence imposed may
not be suspended or reduced by the court."

[4] The area in front of the restaurant was well illuminated.

pelvis, causing her to fall, and dragged her until he pulled the purse from her.

At about the same time that the victim was getting out of the car, Donna Diaz, a nurse employed at the Hospital of St. Raphael was driving one of her daughters home from school when she stopped at a red light at the intersection of Blake and Valley Streets. On her left was the restaurant on Blake Street.

While waiting at this intersection, Diaz observed the defendant start to run across the street, behaving in a nervous manner. Diaz characterized the defendant as nervous because "he was looking around and he was running across the street," and she stated that he "ran directly across the street to where the lady was." Diaz then observed the defendant grab the purse from the victim, who offered no resistance. After he was in possession of the purse, he punched the victim in the pelvis and then she fell down and could not get up. After the defendant ran away with the victim's purse, Diaz instructed her daughter to lock the car doors and she proceeded to assist the victim.

Andre Pender also witnessed the robbery and assault. Pender was operating a van and had stopped at the red light at the intersection of Blake and Valley Streets directly behind Diaz's vehicle. He observed the defendant run across the street toward the victim. He observed that the victim's pocketbook was on her right shoulder, and that she was facing the car when the defendant "snagged the pocketbook" and "yanked [the victim] to the ground." Pender observed that the defendant "had a problem when he yanked the pocketbook from her; it didn't come off real easy, and he pulled her to the ground." When the defendant pulled the victim to the ground, "he was dragging her."

Pender was holding a glass bottle of soda in his hand when he witnessed the crime. As the defendant

attempted to escape by running toward a bridge, Pender got out of his car and hit the defendant on the side of the face with the bottle. He then chased the defendant to a nearby bridge trying to get the pocketbook. When Pender caught the defendant, he grabbed the pocketbook and slipped and fell because of ice on the ground. The defendant ran away. Pender returned the pocketbook to the victim, who was still on the ground. The victim was admitted to a hospital and was diagnosed as having a fractured hip. Her treating physician, John Shine, explained that the victim's injury "was a more serious" type of hip fracture. It could not be repaired with steel pins. Instead, he had to take out the ball of her femur, the round ball of the bone, and put in a prosthesis. The victim remained at the hospital for approximately one week, after which she was transported to a nursing home. Shine also explained that the risk of death to a person sustaining a hip fracture and going through hospitalization was in the realm of 2 to 3 percent.

Later that same night, Russell See, a sergeant with the New Haven police department, observed the defendant, whom he believed fit the description of the person alleged to have committed the crimes, at the McConoky Terrace housing project, which was just under one mile away from the restaurant on Blake Street. See knew the defendant from prior incidents. The defendant first identified himself to See using the alias "Ivan Thompson," but when confronted, the defendant subsequently admitted that his name was Michael Smith. The defendant denied that he had been in the area of the crime. He was released at that time.

Two days later, on December 11, 1996, Pender was contacted by a member of the New Haven police department and asked to view a photographic array. The array contained ten photographs, one of which depicted the defendant. When shown the array, Pender selected the

defendant's photograph as that of the person who had committed the crimes. He said he was 100 percent sure of his identification. He had no trouble selecting the defendant's photograph, and there was no doubt in his mind that the person depicted in the photograph was the person who had committed the crimes. During the trial, Pender also identified the defendant in court as the person who had committed the crimes.

On December 12, 1996, Diaz was shown the same array of ten photographs. She could not be 100 percent sure about any particular photograph. She was, however, able to narrow the photographs down to two, one of which depicted the defendant. Diaz testified at trial that "the two [photographs] that were remaining on the table were too similar for me to eliminate one of them. The two individuals looked too much alike to me." She further explained, however, that "it [was] definitely one of these two guys." During the trial, Diaz also was given an opportunity to make an in-court identification. When shown the defendant, she testified, "I think it is the man. Very well dressed now compared to then. Very well nourished now compared to then. With a nice suit on and clean shaven and a nice haircut." She further testified that "[t]o the best of [her] ability," she thought the defendant was the person who committed the crimes and that she was "90 percent" certain of the identification. She testified that "this individual is very well nourished compared to the individual I saw that night. This individual is well dressed compared to the individual that night. But the face is the face, it is the same, and the height is the same."

I

The defendant contends that there was insufficient evidence in the record to support the court's conviction in violation of his right to due process under the federal constitution and article first, § 8, of our state constitu-

tion. He argues that the state failed to present sufficient evidence to prove his identity as the person who committed the crimes. He also contends that the evidence was insufficient to sustain his conviction of assault in the first degree of a victim sixty or older because the state did not prove that he acted recklessly or that he evinced an extreme indifference to human life. We do not agree.

"Our Supreme Court has stated: In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994), quoting *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993); *State* v. *Famiglietti*, 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg*, 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990)." (Internal quotation marks omitted.) *State* v. *Ingram*, 43 Conn. App. 801, 809, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

"In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty

of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). Moreover, "[i]n evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). "As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, supra, 196; see *State* v. *Sivri*, supra, 231 Conn. 134.

A

The issue of identification is a question of fact to be resolved by the trier of fact and may be shown by circumstantial evidence as well as by direct evidence.

*State* v. *Vasquez*, 53 Conn. App. 661, 665, 733 A.2d 856, cert. denied, 250 Conn. 922, 738 A.2d 662 (1999). Moreover, "[i]n considering the evidence introduced in a case [the trier of fact is] not required to leave common sense at the courtroom door . . . nor . . . expected to lay aside matters of common knowledge or [its] own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that [its] action may be intelligent and [its] conclusions correct." (Internal quotation marks omitted.) *State* v. *Sparks*, 39 Conn. App. 502, 517, 664 A.2d 1185 (1995).

The evidence presented to the court, which it accepted as credible, was that Pender made a positive identification from a fairly presented photographic identification procedure, and that Diaz made an honest partial identification of the defendant as the perpetrator of the crime. The trier of fact, in this case the court, has the sole and absolute responsibility to determine the credibility of the witnesses. *State* v. *Pinnock*, 220 Conn. 765, 778–79, 601 A.2d 521 (1992). Pender, while seated in his van, observed the defendant during the commission of the crime from a distance of less than twenty-five feet. Pender then chased the defendant, caught up with him, retrieved the victim's pocketbook, and was able to get a close look and a good look at the defendant's face. Two days later, he picked the defendant's photograph out of an array of ten[5] photographs and was absolutely positive of his identification. Pender also made a positive in-court identification of the defendant as the person who committed the crimes. Even if the court had discounted all other evidence of the defendant's identity, the evidence was sufficient for conviction based solely on Pender's testimony to permit

---

[5] The defendant has not claimed that the photographic array was either suggestive or that the procedures followed were improper.

the trial court to find that it was the defendant who committed the crimes charged.

We conclude that the court had sufficient evidence to identify the defendant as the perpetrator.

B

The defendant next argues that the evidence was insufficient to sustain his conviction for assault in the first degree of a victim sixty or older. He contends that the evidence, on the basis of the contradictory testimony of the two eyewitnesses, could not demonstrate that he acted recklessly or that he evinced an extreme indifference to human life.

It is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996). The evidence, viewed in the light most favorable to sustaining the judgment, shows that during the robbery the 190 pound defendant punched the four feet, eleven inch, 105 pound, eighty-four year old victim in her pelvis, causing her to fall and fracture her hip, and then dragged her until he pulled her purse from her person.

A person acts recklessly with respect to a particular result or a circumstance described by statute "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . ." General Statutes § 53a-3 (13). The state of mind constituting recklessness may be inferred from conduct. *State* v. *Bunkley*, 202 Conn. 629, 645, 522 A.2d 795 (1987). In this case, recklessness can be inferred from the defendant's brutal conduct as can an extreme indifference to human life.

We conclude that sufficient evidence was presented by the state to sustain the defendant's conviction for assault in the first degree of a victim sixty or older.

## II

The defendant next claims that the court abused its discretion in denying his motion to waive his presence in the courtroom during the testimony of the state's eyewitnesses.

The facts relevant to our analysis are not disputed. The defendant filed a motion prior to trial requesting that he be permitted to waive his presence during portions of the trial. The defendant requested the following: "[T]hat he be absent from the courtroom during the direct and cross-examinations of Andre Pender and Donna Diaz. The defendant agrees to be present in the courtroom during any in-court identification procedure by either Mr. Pender or Ms. Diaz, but only after their descriptions of the perpetrator in the case at bar is fully described on direct and cross-examinations."

During oral argument on this motion, the defendant explained that before the state called Diaz or Pender to testify, he wanted to be permitted to leave the courtroom. Thereafter, the state would be required to limit its direct examinations of these witnesses. Under the defendant's proposal, the prosecutor could ask the witnesses to explain what they observed when the crime took place and to describe the perpetrator of the crime, but would be prohibited from asking questions regarding the out-of-court photographic array identifications or attempting in-court identifications. After the state had completed its limited direct examination of these witnesses, the defendant would then be given the opportunity to cross-examine them regarding their observations of the crime and descriptions of the perpetrator. Only after the defendant had completed his cross-examination of Diaz and Pender would the state be permitted

to return to its direct examination of each witness and ask questions regarding the out-of-court photographic array identifications and attempt in-court identifications.

The court denied the defendant's motion, ruling, "I have read the cases and, of course, this setting is suggestive, but it has been determined that it is not unnecessarily suggestive and, therefore, your request that the defendant be absent throughout the entire testimony, start to finish, of the witnesses is denied. The state is entitled to establish that—well, [it is] entitled to have an in-court identification and I am going to allow it." The court also observed that although the rules of practice allow the defendant to waive his presence during all or part of his trial, case law allows the court "some discretion in that regard. [The defendant] doesn't have an absolute right." Finally, the court observed that as the case law points out, "[y]our main weapon in this regard is cross-examination, and I expect your—you are a skilled attorney, I expect you to cover this area as to what is the basis of their in-court identification. So, your request is denied."

The defendant then made an alternative request that he be permitted to waive his presence during the direct examinations of Diaz and Pender until such time as the state was prepared to conduct its in-court identification procedure. Under this procedure, the state would not be required to bifurcate its direct examinations of the witnesses. The court agreed to this alternative procedure.

The court stated: "The appellate courts have acknowledged that the setting is necessarily suggestive. In an effort to deal with that, I have allowed the defendant to sit outside the view of the identification witnesses until the point of identification. In an effort to increase the reliability and fairness of this necessarily

suggestive identification procedure, I have asked the prosecutor and the prosecutor has agreed not to show the photos to the prospective identification witnesses, and he has agreed to do that and they have not seen these photos. I intend to allow extensive cross-examination on the basis of the in-court identification."

After the court granted the defendant's alternative request, the defendant withdrew his motion for an in-court lineup.

During the trial, the defendant removed himself from the courtroom when Diaz and Pender were called to testify. He appeared only when the state was prepared to attempt an in-court identification. Before the state called Pender to testify, however, the defendant renewed his original request. In again rejecting the defendant's original request, the court stated, "I think there has to be a balance struck between allowing the state to present [its] case in the order that [it is] entitled to and the rights of the defendant, and I think quite frankly I have landed on the side of the rights of the defendant as I should. It is a court trial and you have the right to cross-examination. I will deny your motion, note your exception and we will follow the same procedure." The court further observed that "at some point during the direct examination, I am going to ask [the defendant] to come out for purposes of viewing for possible in-court identification. Defendant's rights are protected by cross-examination, so that is the rule."

"[T]he manner in which in-court identifications are conducted is not of constitutional magnitude but rests within the sound discretion of the trial court. . . . In such cases, the defendant's protection against the obvious suggestiveness in any courtroom identification confrontation is his right to cross-examination . . . or other practical procedures designed to lessen the degree of suggestiveness." (Citations omitted; internal

quotation marks omitted.) *State* v. *Reddick*, 224 Conn. 445, 470, 619 A.2d 453 (1993).

The defendant made no claim that the out-of-court identification procedure was unnecessarily suggestive or unreliable. Therefore, any procedure utilized for an in-court identification is left to the sound discretion of the trial court, including an in-court lineup; *State* v. *Smith*, 200 Conn. 465, 470, 512 A.2d 189 (1986); or allowing the defendant to sit among the spectators in the courtroom. *State* v. *Cubano*, 9 Conn. App. 548, 555, 520 A.2d 250 (1987).

The court, after denying the defendant's motion to waive his presence and require the state to bifurcate direct examinations of Pender and Diaz, granted the defendant's alternative motion, which allowed the defendant to be absent from the courtroom until an in-court identification was to be attempted. The defendant then withdrew his motion for an in-court lineup[6] and failed to request or even suggest a less suggestive in-court identification procedure. Under these circumstances, we find it impossible to conclude that the court abused its discretion in denying the defendant's initial motion. The defendant's right to cross-examine fully and effectively Pender and Diaz was in no way impinged upon by the procedure employed, nor was the state

---

[6] The defendant argues on appeal, having withdrawn the motion before the trial court without explanation, that "[p]lacing the defendant in an in-court lineup after the state's witnesses . . . had just seen photographs of the defendant would have been ill-advised." The record is silent as to whether the court would have allowed an in-court lineup after the state was first allowed to review the photographic array, or whether the court would have allowed, had the defendant requested, that the in-court lineup be conducted prior to the witnesses being shown the photographic arrays. The state noted that to ensure a reliable in-court identification, and at the court's request, the witnesses were not shown the photographs in the array, including the defendant's, and that they had not seen the photographs during the ten months between the date of the out-of-court identification and the date they testified at trial.

deprived of its right to present its case in a logical fashion without being forced to bifurcate its direct examinations of witnesses. In the proper exercise of its discretion, the court accepted the defendant's alternative request and employed an in-court confrontation procedure that did not diminish the defendant's ultimate right of cross-examination.

The defendant has failed to sustain his burden of demonstrating that the court abused its discretion in denying his motion to waive his presence during substantial portions of the testimony of the two eyewitnesses.

The judgment is affirmed.

In this opinion the other judges concurred.