[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1830-ep
By complaint dated January 4, 2000, the plaintiff wife, Christine DeBernardi, commenced this action seeking a dissolution of the marriage on the grounds of irretrievable breakdown, custody, alimony, assignment, property and other relief. The defendant husband, Victor DeBernardi, appeared through counsel. Both parties appeared with counsel on December 6, 2000, and presented testimony and exhibits. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact:
The plaintiff wife, whose maiden name was Christine Yount, married the defendant husband on December 5, 1986, in Meriden, Connecticut. She has resided continuously in the State of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have two minor children who have been born to the plaintiff since the date of the marriage, issue of the marriage: Joshua Ryan DeBernardi, date of birth, April 4, 1988; and Dustin Lewis DeBernardi, date of birth, March 16, 1991. No other minor child or children have been born to the plaintiff since the date of the marriage. The court further finds that no state or municipal agency is contributing to the support of the parties and/or their minor children.
The plaintiff wife is a 41-year-old high school graduate, enjoying good health. She graduated from a technical school and obtained a license from the State of Connecticut as a hairdresser. Since her graduation, the plaintiff has been employed in the clerical/bookkeeping field. She presently works as a bookkeeper earning $17.25 per hour. While the plaintiff is entitled to two weeks paid vacation per year, she receives no pay for sick time and no medical benefits are provided by her employer. The court finds that the plaintiff's earnings and/or earning capacity is $490 per week. The court is cognizant of the plaintiff's claims that she is not paid for sick time when she or the children are required to stay home as a result of an illness. The court finds that the last thirteen-week average is not conclusive and/or binding on the court.
The defendant husband is 41 years old and is also a high school graduate in good health. The defendant has been employed in the security industry as a security material technician. He commenced employment with Mosler Corporation in 1980. He left Mosler for a higher paying security position at Coastal Security in 1990. He soon returned to Mosler Security due to better benefits and working conditions. Since his return to Mosler in the early 1990s, he has enjoyed periodic raises in his salary. The CT Page 1830-eq court finds that the defendant enjoys earnings and/or earning capacity in the amount of $907 per week.
During the courtship between the parties, they were able to save money to purchase an automobile and a home located at 66 Meadow Lane, Southington, Connecticut, for the sum of $95,900. Money to purchase the car came from joint savings amassed from the plaintiff's two jobs and the defendant's security position. As to the downpayment of the purchase of the Meadow Lane residence, $10,000 came from the defendant's ISP savings plan at Mosler Security. The balance of the downpayment and closing costs came from joint funds.
The parties commenced their marital relationship on sound financial footing. They were married on September 5, 1986, in Meriden, Connecticut. According to the testimony of both the plaintiff and the defendant, their marriage continued without incident for a substantial period of time. The plaintiff worked as a bookkeeper/clerk at Levitz Furniture when she quit her job subsequent to the birth of their first child, Joshua. The relationship of the parties resulted in the birth of two boys. The plaintiff did not work for a period of time while the boys were growing up. The defendant continued to work in the security field at Mosler Security and Coastal Security on an uninterrupted basis from the date of the marriage to the present day.
During the last thirteen years, the plaintiff and defendant sold their property at Meadow Street and purchased a home at Fireside Avenue, Bristol, Connecticut, where the plaintiff and the two minor children presently reside. The parties continued to improve the marital dwelling by performing interior repairs and renovations and exterior improvements. The plaintiff assumed the role of a homemaker while the defendant performed his job as a family breadwinner in a manner consistent with what appeared to be a wholesome family environment. The parties purchased a used motor home to travel to Florida and for camping with the children. The defendant has utilized a truck provided by his employer for his business and personal use while the plaintiff operated a family Caravan to transport herself and the children during her normal weekly routine.
The plaintiff and defendant have presented a totally divergent opinion as to the reasons for the breakdown of their marital relationship. The defendant contends that the marriage broke down because of the constant controls placed upon him by the plaintiff. He related to the court an incident at the time of the birth of his first son. He requested the child to be named after him, which his wife flatly refused. He further contended that his wife was jealous throughout the marriage and watched CT Page 1830-er him at all times. He further contended that the plaintiff was also cold relative to sexual relations and would periodically leave him with the children on weekends during shopping sprees forcing him to cook and care for the children. As to his claim of jealously, he related a dating service incident in 1997 when his wife signed her brother up for a dating service, utilizing the family home number. Various women contacted the house as a result of this advertisement. The plaintiff assumed that they were calling the defendant and not her brother. He further contended that she became jealous and went into a rage.
The plaintiff has denied the allegations of the defendant, that she was cold, controlling and jealous. The wife related that the relationship of the parties changed in late 1999, when the husband's depression reached a low point. The parties were in the process of further remodeling the home, when the husband advised the wife that he no longer was interested in continuing their marital relationship. The plaintiff made repeated attempts to the defendant to seek professional help for his depression and further booked a weekend away for the parties during their December anniversary. The wife suspected the husband's infidelity which was later confirmed when the wife found a birthday card made out to a child, Brittany. She later found out that Brittany was the daughter of a bank employee who was involved with her husband.
The court concludes after hearing the testimony and reviewing the evidence that the defendant has embarked on a series of misrepresentations and/or lies since the wife found the card located in his pickup truck. Said misstatements and/or misrepresentations have continued during the trial. The trier of fact is the sole arbiter as to the credibility of witnesses. State v. Smith, 57 Conn. App. 290 (2000). The court finds that the plaintiff's explanation as to the cause of the breakdown of the marriage is the credible explanation. The court further finds that the defendant's explanation as to cause of the breakdown of the marriage was not explained to his spouse during the course of their relationship. The court further finds that the defendant has contrived this story to place him in a better financial position vis-'a-vis alimony and property settlement. The court has considered the fault of the parties as a factor in the overall orders in this case. Sands v. Sands,188 Conn. 98 (1982).
The court has considered all of the statutory factors in Connecticut General Statutes pertaining to alimony and property settlement. The court finds that the defendant, through his infidelity, was the main cause of the breakdown of the relationship between the parties. It is of no import to the trier of fact whether this infidelity reached a sexual crescendo CT Page 1830-es prior to the separation of the parties. It is clear by the evidence that the wife was dumbfounded when she learned of her husband's contention that he no longer loved her and no longer wanted to remain a marital partner. It is also clear by the evidence that the defendant engaged in relationships with different members of the opposite sex prior to his separation from his wife.
The court further finds the defendant left the relationship as a result of seeking at the minimum, emotional and/or psychological solace from a member or members of the opposite sex to the exclusion of his wife. It is clear by the evidence submitted that the defendant's infidelity was the major cause for the breakdown of the marriage. The court finds that the plaintiff did all she could to save the marriage prior to the parties' separation. The defendant continued to misrepresent his feelings to the wife and further was less than candid with the court as to his memory involving his dalliances with members of the opposite sex, Skytel pager messages and alleged conduct of his wife. (Plaintiff's Exhibit 15). The court must take into consideration all of the statutory factors in determining the appropriate amount of alimony and the equitable division of property. The court concludes that the defendant was the major cause of the marital discord and financial predicament resulting from the parties' separation.
As to the issue of child custody and visitation, the parties stipulated at the trial that the parties should share joint legal custody of the two minor children. Both boys are to principally reside with the mother with the father enjoying visitation as set out in the pendente lite orders.
The court has considered all of the statutory factors concerning custody and visitation as set out in Connecticut General Statutes §§46b-56, 46b-56a and 46b-59. The court has also reviewed and considered all of the factors in Connecticut General Statutes §§ 46b-62, 46b-81,46b-82, 46b-84 and other pertinent statutes, the tax implications thereof, earnings and earning capacity differential, causes for the breakdown of the marriage and the consequences of financial award set forth below. The court has jurisdiction of this matter and finds that the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
1. Custody of the Minor Children
a. The parties shall share joint legal custody of the two minor children, Joshua Ryan DeBernardi, date of birth, March 4, 1988; and CT Page 1830-et Dustin Lewis DeBernardi, date of birth, March 16, 1991.
b. The plaintiff mother shall be the primary residential parent of the two minor children.
c. The defendant father shall have the following specific rights of visitation:
The defendant father shall have visitation with the minor children one evening per week from 5 p.m. to 7:30 p.m. and one weekend day per week. The defendant father shall contact the plaintiff mother by telephone on Monday evening each week to arrange the evening and weekend day of visitation for the following week. Said visitation may occur at the residence of the plaintiff, 34 Fireside Lane, Bristol, Connecticut. The defendant father shall have other visitation as agreed upon by the parties with 18-hour notice to the plaintiff mother by the defendant father.
2. Child Support
The defendant father shall pay to the plaintiff mother the sum of $205 per week child support. Said sum is in conformance with the Child Support Guidelines as submitted by defendant's counsel at the trial court date of May 6, 2000. The court adopts the figures on said guideline for gross and net weekly incomes for both the plaintiff and the defendant. However, the court has utilized a $58 per week deduction for medical insurance for the plaintiff wife in arriving at the amount of guideline child support.
3. Medical Insurance
The defendant husband shall maintain medical insurance for the benefit of the minor children as available through his place of employment. The plaintiff will pay the first $100 of unreimbursed and uncovered healthcare expenses per year for each of the minor children. The parties will share the unreimbursed and uncovered healthcare expenses on a 50/50 basis. The provisions of Connecticut General Statutes § 46b-84 shall apply.
4. Daycare Expenses
The plaintiff and defendant shall divide daycare expenses based on the following percentages: The plaintiff shall pay 56 percent of the daycare expenses with the defendant paying 46 percent of the daycare expenses. The parties are further ordered to confer with each other as to the weekly daycare expenses for the minor children, with said daycare CT Page 1830-eu expenses payable weekly in arrears. Said percentage allocation of the daycare expenses also conforms to the child support guidelines.
5. Life Insurance
The plaintiff and the defendant shall maintain each and every life insurance policy presently in force and any life insurance policy provided through their present or future place of employment, with the children as irrevocable beneficiaries until the youngest child attains the age of 19 years old or graduates from high school whichever event shall first occur.
6. IRS and State Exemptions
The defendant father shall be entitled to claim the minor children as dependents for federal and state income tax purposes for each calendar year commencing the calendar year 2000.
7. COBRA Insurance
The plaintiff wife shall have the right to obtain insurance coverage through the husband's medical insurance plan at his place of employment pursuant to the provisions of COBRA at her election and her sole expense. The plaintiff and defendant are further ordered to execute any and all documents necessary to effectuate the provisions of this paragraph.
8. Alimony
The defendant shall pay to the plaintiff periodic alimony in the amount of $100 per week includable for income tax purposes to the plaintiff and deductible to the defendant. Said alimony shall terminate upon the first of the occurrence of the following events:
a. Death of either party.
b. Remarriage of the plaintiff wife.
c. Cohabitation by the plaintiff as provided in Connecticut General Statutes § 46b-86 (b).
d. January 1, 2010.
9. Marital Residence
The defendant shall quitclaim all of his right, title and interest in CT Page 1830-ev and to the marital residence located at 34 Fireside Lane, Bristol, Connecticut to the plaintiff. The plaintiff shall pay and hold the defendant harmless from liability on the mortgage, taxes and insurance on said property. The court finds the value of said property to be $160,000 after reviewing both appraisals and testimony of the parties as to their lay opinion of value. The court finds equity in the amount of $50,000. The plaintiff wife is further ordered to execute a mortgage note in the amount of $10,000, payable without interest secured by a second mortgage deed on said residence payable on the first occurrence of the following events: 1) death of the wife; 2) cohabitation by the wife as provided in Connecticut General Statutes § 46b-86 (b); c) remarriage of the wife; 4) sale or refinance of said property; d) January 1, 2010. If the plaintiff fails to pay said mortgage note, as provided above, interest shall run at the rate of 9 percent, simple interest from date of default to date of payment including attorney's fees and costs of collection.
10. Child Support, Arrearage and Credits
The court hereby finds that the defendant is in arrears for pendente lite child support in the amount of $800. The court further finds that the defendant is entitled to a credit for $117 for Fleet Bank charges paid by the plaintiff to copy bank records for the defendant. The court further finds that the plaintiff wife is entitled to a payment of $100 from the defendant for damages to the security system resulting from his removal of the security pad from the residence. The court hereby finds that a net sum is due by the defendant to the plaintiff in the amount of $783. Said amount shall be paid at the rate of $20 per week, in addition to the child support and alimony previously ordered.
11. Immediate Wage Garnishment
The defendant shall pay the child support of $205 per week, alimony of $100 per week and arrearage on child support minus credits in the amount of $20 per week for a sum total of $325 per week by immediate wage withholding payable through the State Disbursement Unit for the benefit of the plaintiff. The defendant shall pay said sum on a weekly basis directly to the payment until said wage garnishment takes effect.
12. Automobiles
The plaintiff shall have all right, title and interest in and to the 1991 Dodge Caravan. The wife shall pay and hold the defendant from any liability for loan balances and/or repair bills on said vehicle. The defendant shall have all right, title and interest in and to the 1979 CT Page 1830-ew Dodge motor home and 1982 Honda motorcycle. The defendant shall pay and hold the plaintiff harmless from any liability on the loan on said motor home.
13. Bank Accounts
The plaintiff shall have all right, title and interest in and to the checking account and children's CD listed on her financial affidavit dated December 5, 2000. The defendant shall have all right, title and interest in and to the Fleet Bank checking account listed on his financial affidavit dated December 5, 2000.
14. Debts
The plaintiff shall pay and hold the defendant harmless from any liability on the Visa bill and Dr. Lattis, D.D.S. bill listed on her financial affidavit dated December 5, 2000. The defendant shall pay and hold the plaintiff harmless from any liability on the New York Carpet World debt listed on his financial affidavit dated December 5, 2000.
15. Defendant's 401K Plan and Mosler ESOP
The defendant shall have all right, title and interest in and to his 401K plan and Mosler ESOP plan in the approximate amount of $30,000.
16. Miscellaneous Personal Property
The plaintiff shall have all right, title and interest in and to all of the personal property listed in her column in Defendant's Exhibit F. The plaintiff shall also have all right, title and interest in and to the 32" television set and the fish tank listed as proposed property of the defendant in said Exhibit F.
The defendant shall have all right, title and interest in and to the recreation room furniture including sofa/loveseat and sofa/sleeper. He shall also have right, title and interest in and to all of the items previously located in the garage with the exception of the extension ladder needed by the wife to maintain the marital property. All other ladders in the possession of the plaintiff and/or defendant will be divided equally.
As to the yard machines and Webber gas grill with accessories listed on the defendant's side of Defendant's Exhibit F, the plaintiff will have the option of keeping full right, title and interest in and to said CT Page 1830-ex property for the sum of $1000, payable to the defendant within thirty days of said decision. If the plaintiff chooses not to purchase all right, title and interest in and to the yard machines and Webber gas grill with accessories, the parties will divide said items to their mutual satisfaction or sell them to a third party with the proceeds divided equally between the parties.
17. Attorney's Fees
Each party shall pay her/his attorney's fees owed to their respective attorney.
Devine, J.
CT Page 1831