MICHAEL SMITH *v.* COMMISSIONER OF
CORRECTION
(AC 25040)

Foti, Flynn and Dupont, Js.

Argued January 4—officially released May 3, 2005

*Richard C. Marquette*, special public defender, for the appellant (petitioner).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FOTI, J. The petitioner, Michael Smith, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) improperly determined that his trial counsel was not ineffective and (2) applied the incorrect legal standard to evaluate his claim of factual innocence.[1] We disagree with the petitioner and affirm the judgment of the habeas court.

---

[1] In his brief, the petitioner cited legal authority pertaining only to actual innocence. None of the authority cited by the petitioner recognizes a distinction between the terms factual innocence and actual innocence. We conclude, therefore, that the petitioner uses the terms as synonyms and, accordingly, we analyze this claim under an actual innocence standard.

We recount the facts that the jury reasonably could have found, as set forth in *State* v. *Smith*, 57 Conn. App. 290, 748 A.2d 883, cert. denied, 253 Conn. 916, 754 A.2d 164 (2000), in which the petitioner appealed from his conviction of robbery in the first degree in violation of General Statutes § 53a-134, assault of a victim sixty years or older in the first degree in violation of General Statutes § 53a-59a and assault of a victim sixty years or older in the second degree in violation of General Statutes § 53a-60b. This court affirmed the judgment of the trial court.

"On December 9, 1996, at approximately 5:30 p.m., the victim, Jean Deich, an eighty-four year old woman, was to have attended a Christmas party at a restaurant on Blake Street in New Haven. Deich weighed 105 pounds and stood four feet, eleven inches tall. As she exited a vehicle at the sidewalk in front of the restaurant, the [petitioner] grabbed her pocketbook, punched her in the pelvis, causing her to fall, and dragged her until he pulled the purse from her.

"At about the same time that the victim was getting out of the car, Donna Diaz, a nurse employed at the Hospital of St. Raphael was driving one of her daughters home from school when she stopped at a red light at the intersection of Blake and Valley Streets. On her left was the restaurant on Blake Street.

"While waiting at this intersection, Diaz observed the [petitioner] start to run across the street, behaving in a nervous manner. Diaz characterized the [petitioner] as nervous because 'he was looking around and he was running across the street,' and she stated that he 'ran directly across the street to where the lady was.' Diaz then observed the [petitioner] grab the purse from the victim, who offered no resistance. After he was in possession of the purse, he punched the victim in the pelvis and then she fell down and could not get up. After

the [petitioner] ran away with the victim's purse, Diaz instructed her daughter to lock the car doors and she proceeded to assist the victim.

"Andre Pender also witnessed the robbery and assault. Pender was operating a van and had stopped at the red light at the intersection of Blake and Valley Streets directly behind Diaz's vehicle. He observed the [petitioner] run across the street toward the victim. He observed that the victim's pocketbook was on her right shoulder, and that she was facing the car when the [petitioner] 'snagged the pocketbook' and 'yanked [the victim] to the ground.' Pender observed that the [petitioner] 'had a problem when he yanked the pocketbook from her; it didn't come off real easy, and he pulled her to the ground.' When the [petitioner] pulled the victim to the ground, 'he was dragging her.'

"Pender was holding a glass bottle of soda in his hand when he witnessed the crime. As the [petitioner] attempted to escape by running toward a bridge, Pender got out of his car and hit the [petitioner] on the side of the face with the bottle. He then chased the [petitioner] to a nearby bridge trying to get the pocketbook. When Pender caught the [petitioner], he grabbed the pocketbook and slipped and fell because of ice on the ground. The [petitioner] ran away. Pender returned the pocketbook to the victim, who was still on the ground. The victim was admitted to a hospital and was diagnosed as having a fractured hip. . . .

"Later that same night, Russell See, a sergeant with the New Haven police department, observed the [petitioner], whom he believed fit the description of the person alleged to have committed the crimes, at the [McConaughy] Terrace housing project, which was just under one mile away from the restaurant on Blake Street. See knew the [petitioner] from prior incidents. The [petitioner] first identified himself to See using

the alias 'Ivan Thompson,' but when confronted, the [petitioner] subsequently admitted that his name was Michael Smith. The [petitioner] denied that he had been in the area of the crime. He was released at that time.

"Two days later, on December 11, 1996, Pender was contacted by a member of the New Haven police department and asked to view a photographic array. The array contained ten photographs, one of which depicted the [petitioner]. When shown the array, Pender selected the [petitioner's] photograph as that of the person who had committed the crimes. He said he was 100 percent sure of his identification. He had no trouble selecting the [petitioner's] photograph, and there was no doubt in his mind that the person depicted in the photograph was the person who had committed the crimes. During the trial, Pender also identified the [petitioner] in court as the person who had committed the crimes.

"On December 12, 1996, Diaz was shown the same array of ten photographs. She could not be 100 percent sure about any particular photograph. She was, however, able to narrow the photographs down to two, one of which depicted the [petitioner]. Diaz testified at trial that 'the two [photographs] that were remaining on the table were too similar for me to eliminate one of them. The two individuals looked too much alike to me.' She further explained, however, that 'it [was] definitely one of these two guys.' During the trial, Diaz also was given an opportunity to make an in-court identification. When shown the [petitioner], she testified, 'I think it is the man. Very well dressed now compared to then. Very well nourished now compared to then. With a nice suit on and clean shaven and a nice haircut.' She further testified that '[t]o the best of [her] ability,' she thought the [petitioner] was the person who committed the crimes and that she was '90 percent' certain of the identification. She testified that 'this individual is very well nourished compared to the individual I saw that

night. This individual is well dressed compared to the individual that night. But the face is the face, it is the same, and the height is the same.' " *State* v. *Smith,* supra, 57 Conn. App. 292–95.

Following trial, the petitioner was convicted and sentenced to a total effective term of twenty years incarceration. On February 10, 2003, the petitioner filed an amended petition for a writ of habeas corpus. The court held a hearing on September 16 and October 1, 2003. The petitioner alleged (1) that he had received ineffective assistance of counsel, (2) that trial counsel had committed misconduct for failure to turn over the New Haven police department warrant data sheet[2] and (3) actual innocence. In a memorandum of decision filed December 5, 2003, the court denied the petition, and on December 22, 2003, the court granted the petition for certification to appeal. The petitioner then filed a timely appeal on January 16, 2004.

On appeal, the petitioner raises the following claims: (1) that the court improperly denied the petition because trial counsel provided ineffective assistance and (2) that the court applied an incorrect legal standard to evaluate the petitioner's claim of actual innocence.

Generally, "[t]he conclusions reached by the [habeas] court in its decision to [deny] the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wilson* v. *Office of Adult Probation,* 67 Conn. App. 142, 145, 786 A.2d 1120 (2001). "In a habeas appeal, although this court cannot disturb the

---

[2] That count was not pursued because trial counsel had submitted the warrant data sheet in question as an exhibit at the criminal trial and, thus, it did not constitute withheld "exculpatory information."

underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." *White* v. *Commissioner of Correction*, 58 Conn. App. 169, 170, 752 A.2d 1159 (2000).

I

The petitioner first argues that the court improperly denied the petition because trial counsel provided ineffective assistance. We disagree.

The petitioner's claim of ineffective assistance of counsel is governed by the test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as adopted by *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 424, 589 A.2d 1214 (1991). "For the petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different." *White* v. *Commissioner of Correction*, supra, 58 Conn. App. 170, citing *Strickland* v. *Washington*, supra, 694, and *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 445, 610 A.2d 598 (1992). After reviewing the record, we conclude that the court had sufficient evidence before it to support its determination that the petitioner failed to prove that trial counsel's performance fell below an objective standard of reasonableness or that there was a reasonable probability that, but for the alleged failure of trial counsel, the result would have been different.

The petitioner alleges that trial counsel "ignore[d] the petitioner's repeated declarations that he did not commit the crime with which he was charged." The petitioner's trial counsel testified in relevant part that

the petitioner "made it clear . . . from day one that he did not commit this crime, and [she] made efforts to try to develop whatever weaknesses in the identification evidence that there was." The petitioner also claims that trial counsel failed to conduct any pretrial investigation and that this failure prejudiced him. The petitioner's trial counsel testified that her pretrial strategy was limited because the petitioner "made it clear to [her] that he would not consider a plea bargain."

Upon review of the record, it is clear that the petitioner's trial counsel conducted an adequate pretrial investigation. She obtained a complete copy of the state's file in the matter. She met with Diaz to attempt "to develop any discrepancies between what the witnesses were saying in their statements given to the police versus . . . the descriptive appearance of [the petitioner]." She attempted to meet with Pender, but he refused to meet with members of the defense team. She also investigated and developed the petitioner's alibi defense. The conduct of the petitioner's trial counsel displays that she was attentive to the petitioner's statement that he was not guilty of committing the crime and that she conducted an adequate pretrial investigation.

The petitioner further alleges that trial counsel failed to obtain and to introduce two police records, the petitioner's booking information sheet relating to the crimes and his fingerprint card dated December 13, 1996, that constituted favorable evidence of the petitioner's innocence. The petitioner argues that the trial counsel's introduction of those documents would have shown that the petitioner did not match the descriptions of the perpetrator given to the police by the two eyewitnesses and would have proven that the petitioner was not the perpetrator. The discrepancies between the police records and the evidence adduced at trial related only to the build and complexion of the perpetrator. The information contained in the police records regard-

ing the height and weight of the perpetrator was entirely consistent with the information adduced at trial and, therefore, the documentation did not refute the description of the perpetrator concerning those aspects. We focus therefore only on the evidence relating to build and complexion.

As to the perpetrator's build, Diaz and Pender both testified and described the perpetrator's build as thin. See, who stopped the petitioner shortly after the crime, testified that the petitioner had a thin to medium build. The warrant data sheet described the petitioner's build as thin, and both the petitioner's booking sheet and fingerprint card described his build as "muscular." Both Diaz and See testified that the petitioner appeared thinner at the time of the crime than he did at the time of trial. The petitioner's girlfriend also testified that the petitioner was thinner at the time of the crime.

Regarding the perpetrator's complexion, Pender testified that the perpetrator's skin tone was like his own or "a little lighter, maybe." Officer Paul Kenney of the New Haven police department testified that he broadcast a description of the perpetrator as having a lighter complexion on the basis of the information provided to him by Diaz and Pender. The warrant data sheet described the petitioner's complexion as medium. The petitioner's booking sheet described the petitioner's complexion as "medium brown," and his fingerprint card described his complexion as "dark br[ow]n."

Had those police documents been admitted into evidence at the criminal trial, they would have had virtually no impact when viewed among the entirety of the evidence and would not have produced a different verdict. Pender made a positive pretrial identification of the petitioner's photograph and also positively identified the petitioner in court. Diaz narrowed the pretrial photographic array of ten photographs to two similar

appearing individuals, one of whom was the petitioner. Diaz also testified that "[t]o the best of [her] ability," she thought the petitioner was the individual who committed the crimes and that she was "90 percent" certain of the identification. Additionally, the jury had ample opportunity to observe the petitioner firsthand during the trial and to assess whether his build and complexion matched the witnesses' descriptions of him.

The petitioner's trial counsel did an adequate job of impeaching the eyewitnesses' descriptions of the perpetrator. She pointed out several contradictions in the descriptions of the perpetrator. She noted that Diaz had described the perpetrator as unshaven and that Pender had described him as having facial hair. She demonstrated to the jury that the petitioner had a visible facial scar that neither eyewitness had described. She argued that the petitioner was not a thin man, even if he was somewhat thinner at the time of his arrest. She also elicited evidence that the petitioner did not have any gray hair and did not wear his hair in an Afro style in contrast to the descriptions given by the two eyewitnesses. The jury was free to weigh that evidence. Accordingly, we conclude that the petitioner's claim is without merit.

## II

The petitioner next argues that the court applied an incorrect legal standard to evaluate his claim of actual innocence. The petitioner suggests that the court applied the test set forth in *Strickland*[3] to his claim of actual innocence. Upon review of the court's memorandum of decision, it is clear that the court correctly applied the standard set forth in *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 791–92, 700 A.2d 1108 (1997), to evaluate the claim of actual innocence. The court, citing *Miller*, clearly stated that "the proper

---

[3] See *Strickland* v. *Washington*, supra, 466 U.S. 687.

standard for actual innocence is twofold; the petitioner must establish by clear and convincing evidence, taking into account both the evidence adduced at the original trial and the evidence adduced at the habeas trial, that the petitioner is actually innocent and that no reasonable fact finder would find the petitioner guilty of the crime." The court then stated that "[t]he standard of proof of actual innocence is quite high" and concluded that "[b]ased upon the evidence adduced at the original trial and the evidence at the habeas trial, this court is not clearly convinced that a fact finder would find [the petitioner] not guilty." The petitioner offers no legal or factual basis to challenge that finding.

On the basis of our review of the court's memorandum of decision, we conclude that the petitioner has failed to show that the court improperly analyzed and rejected his claim of actual innocence and, thus, the petitioner's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.